**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| JOSE LUNA, individually and on behalf of those similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>POLARIS INDUSTRIES, INC., AND POLARIS SALES, INC.,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jose Luna individually and on behalf of the other members of the below-defined Classes he seeks to represent (collectively, "Plaintiff" or the "Class," unless otherwise identified herein), for their Class Action Complaint (the "Complaint") allege against Defendants Polaris Industries, Inc. and Polaris Sales, Inc. ("Defendant" or "Polaris"), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action seeking redress and remedy for Defendants' practice of knowingly designing, manufacturing, marketing, and selling defective 2013-2018 Polaris RZR 900 and 1000 Recreational Off-Highway Vehicles.  (the "Class Vehicles").

2.      The Class Vehicles pose a significant and immediate safety threat to all owners, passengers, nearby persons and property owners, and to the public in general in that they are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that could result in death, and/or catastrophic injury to persons and property. This defect is and has been for some time well-known by Defendants to be a safety defect, and a serious hazard to personal and public safety.

3.      The Class Vehicles have been developed, designed, manufactured, assembled, tested, marketed, promoted, advertised, sold, warranted, distributed, serviced, repaired and investigated by Defendants since at least 2013.

4.      At all times relevant to this action, Defendants intentionally, recklessly, and/or negligently concealed, suppressed, and omitted the risks, dangers, defects and disadvantages of the Class Vehicles, including the failure and inability to remediate the fire safety defect from which they suffer. At all times relevant to this action, Defendants marketed, sold, distributed, advertised, warranted, serviced, maintained, repaired and investigated the Class Vehicles, representing them explicitly and impliedly as safe to use, when, in fact, Defendants had reason to know, and did know, that the Class Vehicles were not safe to use for their intended or for any purpose. The Class Vehicles pose a serious risk to the safety of owners, users, passengers, occupants, pedestrians and fellow drivers, and nearby persons and property, including significant injury, maiming or death.

5.      Defendants have failed to disclose and concealed these true facts from Plaintiff and the other members of the Class, and the public in general, and have failed to advise them reasonably that the Class Vehicles cannot be operated safely and without significant risk of injury, cannot be safely purchased, sold, or operated, and are valueless for their intended or any purpose.

6.      The owners of Class Vehicles cannot operate their vehicles without putting themselves at risk of injury and property damage due to the fire hazard they present. They also cannot sell their Class Vehicles because Defendants have failed to identify the root cause or effectively remediate the fire safety hazard.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because at least one member is of diverse citizenship from Defendants, there are more than 100 class members nationwide, and the aggregate claims of the Class exceed $5,000,000 exclusive of costs and interest. None of the causes of action stated here has been assigned or otherwise given to any other court or tribunal.

8.      Venue is proper in this District pursuant to 28 U.S.C. 1391(a), (b) and (c). Defendants all reside in this district, and they market, sell and distribute in this district, receive substantial compensation and profits from sales, maintenance, and service of Class Vehicles in this District, and have and continue to conceal and make material omissions from this District.

## PARTIES

### Plaintiff

9.      Plaintiff Jose Luna, who resides in El Monte, California, purchased a new Polaris RZR 1000 vehicle on or about February 9, 2018. His vehicle, which falls within the definition of Class Vehicles, set on fire during operation and burned within one hour of its initial operation. Luckily, no one suffered personal injuries as a result. Plaintiff's Class Vehicle is a total loss. Plaintiff Luna reported this event and his claim to Defendants who have, to date, simply informed him of their intent to send out an investigator. Plaintiff Luna paid in excess of $15,000.00 for his Class Vehicle. Plaintiff Luna would not have purchased or used a Class Vehicle had he been reasonably apprised of the ongoing fire safety hazard associated with Class Vehicles.

### Defendants

10.     Defendant Polaris Industries, Inc. is a Delaware corporation with its principal place of business in Minnesota. Polaris Sales, Inc. is a Minnesota corporation with its principal place of business in Minnesota. Defendants direct and coordinate all of Polaris' activities, including design, development, marketing and consumer communications, and investigation of alleged defects in Polaris vehicles, including Class Vehicles, in the California and United States market.  Defendants engaged in these activities with respect to the Class Vehicles from their principal place of business in the State of Minnesota since at least 2012.

## FACTS COMMON TO ALL COUNTS

11.     Defendants have designed, developed, and engaged in marketing and consumer communications, repaired, maintained, warranted, and conducted ongoing investigation regarding in excess of 133,000 Class Vehicles they sold between at least 2012 and the present, in the California and U.S. market.

12.     The Class Vehicles contain one or more defects which result in an unreasonable risk of injury and death, and property damage, in that they pose a significant fire and burn hazard to operators and passengers.

13.     On October 5, 2015, Polaris issued recall number 16-702 for 53,000 model year 2015 RZR 900 series and RX XP 1000 series vehicles.[1] The cause stated in the recall notice was that the fuel vent line could be misrouted, causing it to become pinched. That in turn could over pressurize the fuel tank and leak fuel. Polaris's press release noted that it had also received reports of the driveline contacting the pressurized fuel tank, which also caused fuel leaks.[2] Polaris said it had received four reports of fuel leaks in the RZR 900 series, including two fires and one minor burn injury, and 25 reports of fuel leaks in the RZR 1000 series, with no fire incidents.[3]

14.     What Polaris failed to report in the recall was that in July 2015, 15-year-old Baylee Hoaldridge suffered burns over 65 percent of her body when the 2015 RZR 900 her family had rented tipped on its side and burst into flames.[4] Baylee died from complications a month after the recall was issued.[5]

15.     When Polaris subsequently rolled this recall into another expanded recall, it provided more information that demonstrated the fuel vent problem was also related to the exhaust pipe's location. In addition to the kinked fuel vent line, "[a]n improperly routed fuel tank vent line may have insufficient clearance to the exhaust head pipe. A vent line with insufficient clearance to the exhaust head pipe may pose a fire hazard."[6]

16.     The specified "fix" did not actually resolve the fire risk. On March 5, 2016, a fire started in a 2015 RZR XP4 1000 while a 19-year-old and 13-year-old were sitting in the

---

[1] Polaris Indus., Recall No. 16-702, Oct. 5, 2015.
[2] Polaris Industries Recalls RZR Recreational Off-Highway Vehicles Due to Potential Fire Hazard, Oct. 5, 2015.
[3] Polaris Indus., Recall No. 16-702, Oct. 5, 2015.
[4] Caroline Connolly, Attorney for Family of Teen Girl Severely Burned in Crash Says Polaris Should Consider Vehicle Recall, Fox 13 Salt Lake City, Aug. 27, 2015.
[5] Jeffrey Meitrodt, Polaris Recalls 133,000 Off-Road Vehicles After Reports of Fire, Minneapolis Star Tribune, Apr. 19, 2016.
[6] Polaris Indus., Tech. Serv. Bulletin Z-16-01-AD, Apr. 19, 2016.

3

occupant compartment.[7]  The fire engulfed the vehicle and burned it down to the metal chassis

before help could arrive.[8] The recall repair had been completed three months earlier.[9]

17.     On December 10, 2015, in recall number 16-257, Polaris recalled 2,230 model

year 2016 RZR XP Turbo and RZR XP 4 Turbo vehicles, stating that the turbocharger's oil drain

line could leak, posing a fire hazard. At that time, Polaris reported two reports of oil leaks and

two reports of fire with no injury. The turbocharged vehicles were first recalled only two months

after they were released into the market.

18.     This recall would be expanded to 13,000 turbocharged vehicles in September

2016. According to that recall: "The vehicle's engine can overheat and turbo system's drain tube

can loosen."[10]  Polaris reported it had received 19 reports of vehicles catching fire, causing six

burn injuries. Polaris stated one of those incidents involved a young child – that is a 6-year-old

girl who was burned over 40 percent of her body when the RZR Turbo caught fire in Utah's

American Fork Canyon, also setting fire to 15 acres of land.[11]

19.     Owners of vehicles repaired under this recall posted on online forums that the

heat shield their dealer installed on the exhaust pipe to repair this recall had burned shortly

thereafter.[12]

20.     Realizing that the initial recall for the RZR 900 and 1000 series was inadequate,

Polaris expanded the recall on April 19, 2016, to include a total of 133,000 vehicles: the 2013-

2014 RZR XP 900 (production ended after 2014, when it became the RZR 900), 2014-2016 RZR

XP 1000 (entire production to date), 2015-2016 RZR 900 (entire production to date), 2015-2016

RZR S 900 (entire production to date), 2016 RZR S 1000 (debut year).

---

[7] CPSC, Epidemiologic Investigation Report, No. 160309CBB1457, Mar. 28, 2016.
[8] *Id.* at 3.
[9] *Id.* at 1.
[10] Polaris Indus., Recall No. 16-257, Sept. 1, 2016.
[11] Jed Boal, Recent ORV Explosion Raises Questions About Vehicle's Safety, KSL.com, Jul. 26, 2016, https://www.ksl.com/?sid=40821427&nid=148, accessed Apr. 6, 2018.
[12] RZR Forums.Net, 16 Turbo with Recall done heat shield allegedly burning, Sept. 24, 2016, http://www.rzrforums.net/rzr-xp-turbo/336465-16-turbo-recall-done-heat-shieldallegedly-burning.html, accessed Apr. 5, 2018.

21.    Polaris did not specify a root cause on the recall notice, saying only the vehicles "can catch fire while consumers are driving, posing fire and burn hazards."[13] Polaris reported it had received 160 reports of fires with just those vehicles and 19 injury reports, including some for third degree burns.[14] Inexplicably, Polaris still did not include Baylee Hoaldridge's death in the tally.

22.    In a press release, Polaris stated it had "already begun implementation of its Corrective Action Plan and has made manufacturing updates in new-production vehicles. Polaris also plans to include a warning on new-production vehicles instructing riders not to carry fuel and other flammable liquids in their vehicles, and cautions against carrying flammable liquids in previously produced models."[15]

23.    Polaris's Chairman and CEO Scott Wine assured the public, "[w]e are working day and night to inform our customers and dealers and to obtain the parts needed for the repairs we identified in our comprehensive analysis. We apologize for the inconvenience to our customers as we work to ensure all the systemic thermal risks we identified are eliminated from our vehicles."[16]

24.    However, on March 2, 2017, Polaris again expanded on previous recalls, re-recalling 13,500 model year 2016 vehicles that had already been recalled and adding model year 2017 for certain vehicles in the RZR 900 series, RZR XP 1000, and RZR XP 4 Turbo. It noted that many of these had already been recalled, meaning that those fixed under the expansive April 2016 recall were still defective.

25.    This recall stated that the engine could misfire, causing the exhaust temperature and nearby components to overheat and melt.[17] Polaris received one report of fire and two reports of melting related to engine misfire.[18]

---

[13] Polaris Indus., Recall No. 160146, Apr. 19, 2016.
[14] *Id.*
[15] Press Release, Polaris Industries Voluntarily Recalls Certain RZR 900 and 1000 Off-Road Vehicles, Apr. 16, 2016.
[16] *Id.*
[17] Polaris Indus., Recall No. 17-102, Mar. 2, 2017.
[18] *Id.*

26.     On December 19, 2017, Polaris and CPSC issued a joint statement warning the public that fires in the 2013-2017 RZR 900 and 1000 vehicles had caused death, serious injuries, and property damage.[19] The warning noted that many of the vehicles were previously recalled, "[h]owever, users of the vehicles that were repaired as part of the April 2016 recall continue to report fires, including total-loss fires."[20] The warning also stated that some of the 2017 RZR vehicles not previously recalled have also experienced fires.[21]

27.     The joint statement offered no solution, saying only that "[t]he CPSC and Polaris continue to work together to ensure fire risks in these vehicles are addressed. However, at this time, the CPSC and Polaris want to make the public aware of the fires involving these vehicles."[22]

28.     On January 12, 2018, Polaris wrote by letter to owners of Class Vehicles. Noting Defendants "ongoing commitment to the safety of [its] riders," and "because [it] care[s] about safety[,]" Defendants represented they "continue to monitor" its products. This letter advised about fires that had "caused death, serious injuries and property damage." This letter further advised that "users of the vehicles that were repaired as part of the April 2016 recall continue to report fires, including total-loss fires[,]" and represents that 2017 Vehicles not subject to the prior voluntary recall. "have also experienced fires." Defendants note in misleading fashion a reference to their motivation to "reduce the risk of fires in off-road vehicles, regardless of whether they result from original vehicle design, or manufacturing, or modifications, or consumer use" without addressing the specific fire risk associated with Class Vehicles directly.

29.     Truth is, Plaintiff alleges, that Defendants, and each of them, have failed to identify the root cause or effectively remediate the fire safety hazard in the Class Vehicles through their prior voluntary recalls or otherwise, cannot do so at the present time, and know that Class Vehicles are presently unsafe to use for their intended or any purpose given the material safety hazard they pose. Defendants have failed to disclose and concealed these true facts from Plaintiff and the

---

[19] Joint Statement of CPSC and Polaris on Polaris RZR 900 and 1000 Recreational Off-Highway Vehicles (ROVs), Dec. 19, 2017.
[20] *Id.*
[21] *Id.*
[22] *Id.*

other members of the Class, and the public in general, and have failed to advise them reasonably that the Class Vehicles cannot be operated safely and without significant risk of injury, cannot be safely purchased, sold or operated, and are valueless for their intended or any purpose.

30.     To date, the CPSC and Polaris have failed to publicly specify root causes or offer a viable repair. Thus, owners of the 2013-2017 RZR 900 and 1000 series vehicles are faced with a difficult conundrum: operate Class Vehicles with the risk of fire, park Class Vehicles until a fix is devised, or sell at a value depressed by one or more defects contained in the Class Vehicles.

31.     On April 2, 2018, Polaris issued yet another recall related to the fire hazard defect. The recall applies to 107,000 model year 2014-2018 RZR XP 1000 vehicles in which the exhaust silencer fatigues and cracks and the heat shield fails to manage the heat, leading to melting of nearby components or fire.[23]

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

32.     Plaintiff could not have discovered through reasonable diligence that his Class Vehicle was defective within the time period of any applicable statutes of limitation.

33.     Among other things, Plaintiff did not know and could not have known that the Class Vehicle are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that can result in death, and/or catastrophic injury to persons and property.

### Fraudulent Concealment Tolling

34.     Throughout the time period relevant to this action, Defendants concealed from and failed to disclose to Plaintiff and the other Class members vital information about the potentially deadly defect described herein. Indeed, Defendants kept Plaintiff and the other Class members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiff nor the other Class members could have discovered that their Class Vehicles were defective, even upon reasonable exercise of diligence.

---

[23] Polaris Indus., Recall No. not provided, Apr. 2, 2018.

35.     Specifically, Defendants have known that the Class Vehicles are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that can result in death, and/or catastrophic injury to persons and property.

36.     Despite their knowledge of the defective nature of the Class Vehicles, Defendants failed to disclose to and concealed, and continues to conceal, this critical information from Plaintiff and the other members of the Class even though, at any point in time, it could have done so through individual correspondence, media release, or any other means.

37.     Plaintiff and the other Class members justifiably relied on Defendants to disclose the one or more material defects in the Class Vehicles they purchased as such defects were hidden and not discoverable through reasonable efforts by Plaintiff and the other Class members.

38.     Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any claims that Plaintiff and the other Class members have sustained as a result of the material defect(s) by virtue of the fraudulent concealment doctrine.

**Estoppel**

39.     Defendants are under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the Class Vehicles.

40.     Defendants knowingly failed to disclose or concealed the true nature, quality, and character of the Class Vehicles from consumers.

41.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

## CLASS ALLEGATIONS

42.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to represent and certify the following Classes:

> The California Class: All current and former owners of a Class
> Vehicle purchased within California.

> The Nationwide Class: All current and former owners of a Class
> Vehicle purchased in the United States.

43.     Excluded from the Class are Defendants, as well as Defendants' employees, affiliates, officers and directors, including franchised dealers, any individuals who experienced physical injury as a result of the defect at issue in this litigation, and the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the class definition if discovery or further investigation reveals that the class should be expanded or otherwise modified.

44.     Plaintiff reserves the right to re-define the Class prior to class certification.

### Fed. R. Civ. P. 23(a) Prerequisites

45.     **Numerosity** - The Class are so numerous that joinder of all members is impracticable. The precise number of Class Members is unknown and is within the exclusive control of Defendants and its affiliated dealerships. According to publically available information, Defendants have sold more than one hundred thousand Class Vehicles throughout the United States. Accordingly, joinder of claims would be impractical.

46.     **Commonality** - The claims of Plaintiff and the Class involve common questions of fact and law that will predominate over any individual issues. These common questions include, but are not limited to:

a.  Whether the Class Vehicles were defectively designed;

b.  Whether the Class Vehicles constitute an unreasonable safety risk;

c.  Whether the implied warranty of merchantability applies to Class Vehicles;

d.  Whether Defendants breached the implied warranty of merchantability when it sold the Class Vehicles;

e.  Whether Defendants knew or should have known that Class Vehicles were defective before they were first sold to consumers;

f.  When Defendants first knew or should have known that the Class Vehicles were defective;

g.  Whether Defendants misrepresented or omitted material information regarding Class Vehicles;

h.  Whether Defendants concealed the defective nature of the Class Vehicles;

  i. Whether Defendants had and/or has a duty to disclose the defective nature of the Class Vehicles prior to sale;

  j. Whether Defendants had and/or has a duty to disclose the defective nature of the Class Vehicles to current Class Vehicle owners;

  k. Whether Class Vehicles have conformed to reasonable buyers' expectations;

  l. Whether Defendants' conduct constitutes a deceptive act or practice in violation of California consumer protection laws;

  m. Whether Plaintiff and other members of the Class suffered monetary damages as a result of Defendants conduct;

  n. Whether Plaintiff and other members of the Class are entitled to compensatory, exemplary, statutory, or punitive damages and the amount of any such damages; and

  o. Whether Defendants should be declared financially responsible for notifying Class Members about the defective nature of the Class Vehicles and for all damages to Class Members as a result.

47. **Typicality** – Plaintiff's claims are typical of Class members' claims. As described herein, Plaintiff and the other Class members purchased a Class Vehicle, which was designed, manufactured, marketed, distributed, and/or sold by Defendants. Plaintiff and the other Class members have been damaged by Defendants' conduct. Plaintiff and the other Class members have incurred similar or identical losses relating to the Class Vehicles. Furthermore, the factual bases of Defendants' misconduct are common to all Class members and represent a common thread of misconduct resulting in injury to all Class members.

48. **Adequacy** - Plaintiff will fully and adequately represent and protect the interests of the Class because he shares common interests with Class Members as a result of Defendants' conduct.

49. Plaintiff has retained counsel with experience in complex, commercial, multi-party, mass tort, consumer, and class-action litigation. Plaintiff's counsel have prosecuted dozens

of complex class actions, including those involving defective automobiles, in state and federal courts across the country.

50.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of the Class.

### Fed. R. Civ. P. 23(b) Prerequisites

51.    **Predominance** - Questions of law and fact common to the Class, including those listed above, predominate over questions affecting individual members. Individual damages on the matter can be readily calculated by documented expenses and monetary loss due to the defective nature of the Class Vehicles. Thus, the question of individual damages will not predominate over legal and factual questions common to the Class. Additionally, Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief and/or corresponding declaratory relief is appropriate with respect to the Class.

52.    **Superiority.** Defendants' scheme treated consumers as a Class to be uniformly deceived. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff and the other Class members have all suffered and will continue to suffer economic harm and damage as a result of Defendants' unlawful and wrongful conduct, which was directed toward Class members and the public as a whole, rather than specifically or uniquely against any individual Class members. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members will continue to incur damages, and Defendants' misconduct will continue without effective remedy.

53.    **Declaratory and Injunctive Relief.** Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Defendants' liability would establish incompatible

standards and substantially impair or impede the ability of Class members to protect their
interests. Classwide relief and Court supervision under Rule 23 assures fair, consistent, and
equitable treatment and protection of all Class members, and uniformity and consistency in
Defendants' discharge of its duties to perform corrective action regarding the vehicles.

### FIRST CLAIM FOR RELIEF

**Violation of the California Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

54.     Plaintiff incorporates by reference all allegations in this Complaint as though fully
set forth herein.

55.     Plaintiff brings his First Claim for Relief on behalf of himself and the California
Class.

56.     California Business and Professions Code section 17200 prohibits "any unlawful,
unfair or fraudulent business act or practice."  For the reasons described above, Defendants have
engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California
Business and Professions Code section 17200.

57.     Defendants' misrepresentations and concealment of material facts, as set forth
herein, constitute an "unlawful" practice because they violate California Civil Code sections
1572, 1573, 1709, 1710, 1711, 1770, California Business and Professions Code sections 17200 *et
seq.* and the common law.

58.     Defendants' misrepresentations and concealment of material facts, as set forth
herein, also constitute "unfair" business acts and practices within the meaning of California
Business and Professions Code sections 17200 *et seq.*, in that Defendant' conduct was injurious
to consumers, offended public policy, and was unethical and unscrupulous. Defendants' violation
of consumer protection and unfair competition laws in California resulted in harm to consumers.

59.     There were reasonable alternatives available to Defendants to further their
legitimate business interests, other than the conduct described herein.

60.     California Business and Professions Code section 17200 also prohibits any
"fraudulent business act or practice."

61.    Defendants' misrepresentations and concealment of material facts, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code section 17200.

62.    Defendants' acts of misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiff and the other members of the California Class to purchase Class Vehicles. Plaintiff and the other California Class members saw and justifiably relied on Defendants' knowing, affirmative, and active concealment when they purchased their Class Vehicles.

63.    Defendants' conduct caused and continues to cause injury to Plaintiff and the other members of the California Class. Plaintiff and the other members of California Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct.

64.    Defendants' failure to disclose the potentially deadly safety hazard associated with its Class Vehicles has and continues to mislead consumers because the failure to disclose this safety hazard was and remains material to all current and former owners of Class Vehicles. Plaintiff and other members of the California Class attach significant importance and influence to safety hazards, like a recreational vehicle that is prone to set on fire suddenly and without warning, which hazard cannot be predicted or remediated with any or reasonable confidence.

65.    Additionally, the fact that the Class Vehicles are prone to set on and cause a fire at any moment is material because it presents a safety issue and places the driver, passengers, and all those around a Class Vehicle at risk of serious harm.

66.    Plaintiff and the other members of the California Class would not have purchased, paid to warrant, nor continued to use their Class Vehicles had it not been for Defendants' misrepresentations and concealment of material facts.

67.    Plaintiff and the other California Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff and the other California Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to Plaintiff and other

13

California Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 and 3345, and any other just and proper relief available under California's Unfair Competition Law.

## SECOND CLAIM FOR RELIEF

### Violation of California Consumers Legal Remedies Act

### Cal Bus. & Prof. Code §§ 1750, *et seq.*

68.     Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

69.     Plaintiff brings his Second Claim for Relief on behalf of himself and the California Class.

70.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA"). Plaintiff and the other members of the California Class are consumers as defined by California Civil Code section 1761(d). The Class Vehicles are goods within the meaning of California Civil Code section 1761(a).

71.     Defendants violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the other members of the California Class, which were intended to result in, and did result in, the sale of the Class Vehicles:

(5)     Representing that [the Class Vehicles have]… characteristics…[and] uses…which they do not have….

(7)     Representing that [the Class Vehicles] are of a particular standard…if they are of another.

(9)     Advertising [the Class Vehicles]…with intent not to sell them as advertised.

72.     Defendants violated the CLRA by failing to disclose to Plaintiff and the other members of the California Class the material fact that the Class Vehicles contain one or more defects, and are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that can result in death, and/or catastrophic injury to persons and property.

73.     Plaintiff and the other members of the California Class had a reasonable expectation that the Class Vehicles would not suffer from one or more defects that would present a significant safety risk as described herein.

74.     Defendants' concealment of the true characteristics of the Class Vehicles were material to Plaintiff and the other members of the California Class, as Defendants intended. Had they known the truth, Plaintiff and the other members of the California Class would not have purchased the Class Vehicles, or would have paid significantly less for them.

75.     Plaintiff and the other members of the California Class had no way of learning the facts that Defendants had concealed or failed to disclose nor could have unraveled Defendants' deception on their own.

76.     Defendants had an ongoing duty to Plaintiff and the other members of the California Class to refrain from unfair and deceptive practices under the California CLRA in the course of their business. Specifically, Defendants owed Plaintiff and the other members of the California Class a duty to disclose all the material facts concerning the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed it from Plaintiff and the other members of the California Class.

77.     Plaintiff and the other members of the California Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment material information.

78.     Defendants' violations present a continuing risk to Plaintiff and the other members of the California Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

79.     Under Section 1782(d) of the CLRA, Plaintiff, on behalf of himself and the other members of the California Class, seeks an order enjoining the act and practices described above, restitution of property, and any other relief that the court deems proper.

80.     Plaintiff provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days, Defendants fail to provide appropriate relief for their violations of the CLRA, Plaintiff will also amend this Complaint to

15

seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that they seek now.

### THIRD CLAIM FOR RELIEF

**Violation of Song-Beverly Consumer Warranty Act –**

**Breach of Implied Warranty**

**Cal Civ. Code §§ 1790, *et seq*.**

81.     Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

82.     Plaintiff brings his Third Claim for Relief on behalf of himself and the California Class.

83.     Plaintiff and the other members of the California Class who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

84.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

85.     Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

86.     Defendants impliedly warranted to Plaintiff and the other members of the California Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

87.     Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

> (1) Pass without objection in the trade under the contract description.
>
> (2) Are fit for the ordinary purposes for which such goods are used.
>
> (3) Are adequately contained, packaged, and labeled.

16

(4) Conform to the promises or affirmations of fact made on the container or label.

88.     Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles are safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

89.     Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other members of the California Class with reliable, durable and safe transportation because they are inherently defective in that they contain one or more defects that could create a substantial product hazard and create an unreasonable safety risk of serious injury or death. Specifically, the Class Vehicles are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that could result in death, and/or catastrophic injury to persons and property.

90.     Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Breach of Implied Warranty of Merchantability**

**Cal. Com. Code § 2314,** *et seq***.**

91.     Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

92.     Plaintiff brings his Fourth Claim for Relief on behalf of himself and the California Class.

93.     Defendants were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code § 2104(1), and "sellers" of motor vehicles under § 2103(1)(d).

17

94.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

95.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code § 2314.

96.     Defendants sold Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.

97.     The Class Vehicles were not in merchantable condition or fit for their ordinary purpose as they are inherently defective in that they contain one or more defects that could create a substantial product hazard and create an unreasonable safety risk of serious injury or death. Specifically, the Class Vehicles are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that could result in death, and/or catastrophic injury to persons and property.

98.     Defendants breaches of the implied warranty of merchantability caused damage to Plaintiff and the other members of the California Class. The amount of damages due will be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Fraudulent Concealment

99.     Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

100.    Plaintiff brings his Fifth Claim for Relief on behalf of himself and the Nationwide Class.

101.    Defendants concealed and suppressed material facts, namely, the fact that the Class Vehicles are dangerous and a safety hazard because they are prone to catching fire during operation suddenly, without warning or advance notice, or ability to predict or otherwise anticipate.

102.    Defendants knew its concealment and suppression of material facts was false and misleading.

18

103.    As a result of Defendants' failure to disclose to Plaintiff and the other members of the Nationwide Class the material fact that the Class Vehicles are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that could result in death, and/or catastrophic injury to persons and property, consumers have lost money and suffered injury in fact.

104.    The fact that the Class Vehicles are prone to catching fire is material because no reasonable consumer expects their Class Vehicle to catch on fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict. Additionally, the fact that the Class Vehicles are prone to catching fire is material because it presents a safety issue and places the driver, passengers, and anyone around the Class Vehicles at risk of serious harm.  The Class Vehicles create a substantial safety hazard and unreasonable risk of serious injury or death. Accordingly, Plaintiff and the other members of the Nationwide Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts.

105.    Defendants made the omissions and concealment of material facts discussed above with knowledge of the effect of concealing these material facts. Defendants knew that by misleading consumers, they would sell more Class Vehicles.

106.    Plaintiff and the other members of the Nationwide Class justifiably relied upon Defendants' knowing, affirmative and active concealment. By concealing material information about the Class Vehicles, Defendants intended to induce Plaintiff and the other members of the Nationwide Class into purchasing the Class Vehicles.

107.    Defendants acted with malice, oppression and fraud.

108.    As a direct and proximate result of Defendants' omission, Plaintiff and other members of the Nationwide Class purchased Class Vehicles that were defective as described herein that they either paid too much for or would not have purchased if the defect had been disclosed to them and therefore have incurred damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

109.    Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

110.    Plaintiff brings his Sixth Claim for Relief on behalf of himself and the Nationwide Class.

111.    Defendants profited unjustly from the sale of Class Vehicles at inflated prices as a result of concealing their knowledge that the Class Vehicles are prone to and have a recorded history of catching fire during operation suddenly, without expectation and/or apparent ability to anticipate or predict, that can result in death, and/or catastrophic injury to persons and property, and concealing their failure and inability to remediate this material defect.

112.    As a proximate result of Defendants' wrongful acts and omissions described herein, and as a result of Defendants' ill-gotten benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff and the other members of the Nationwide Class.

113.    The circumstances as described herein are such that it would be inequitable for Defendants to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff and the other members of the Nationwide Class.

114.    Plaintiff and the other members of the Nationwide Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct, as described above.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests the Court enter judgment against Defendants, as follows:

1.    Certifying the Classes, as requested herein;

2.    Ordering that Defendants are financially responsible for notifying all members of the Classes of the alleged omissions and active concealment of material facts discussed herein;

3.    Awarding Plaintiff and the other members of the Class compensatory damages in an amount according to proof at trial;

4.      Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the other members of the Class;

5.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

6.      Awarding to Plaintiff and the other members of the Class punitive damages;

7.      Ordering Defendants to engage in corrective advertising;

8.      Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

9.      An award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5;

10.     Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

11.     Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

12.     For such other and further relief as the Court deems just and proper.

<div style="margin-left:2em">

MCEWEN LAW FIRM, LTD.

Dated:  April 10, 2018

/s/ Gregory N. McEwen_____
Gregory N. McEwen (ID #0273843)
Email: gmcewen@mcewenlaw.com
5850 Blackshire Path
Inver Grove Heights, Minnesota 55076
Telephone: (651) 224-3833

</div>

BARON & BUDD, P.C.
Roland Tellis (to be admitted *pro hac vice*)
rtellis@baronbudd.com
Mark Pifko (to be admitted *pro hac vice*)
mpifko@baronbudd.com
David Fernandes (to be admitted *pro hac vice*)
dfernandes@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:     (818) 839-2333
Facsimile:     (818) 986-9698

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (to be admitted *pro hac vice*)
Email: kirk@cwclawfirm.com
Clifford L. Carter (to be admitted *pro hac vice*)
Email: cliff@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone: (916) 567-1111

DREYER BABICH BUCCOLA, et al.
Roger A. Dreyer (to be admitted *pro hac vice*)
Email: rdreyer@dbbwclaw.com
Christopher W. Wood (to be admitted *pro hac vice*)
Email: cwood@dbbwclaw.com;
20 Bicentennial Circle
Sacramento, California 95826
Telephone: 916-379-3500

*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action to which he is entitled.

Respectfully submitted,

MCEWEN LAW FIRM, LTD.

Dated:  April 10, 2018      /s/ Gregory N. McEwen_____
Gregory N. McEwen (ID #0273843)
Email: gmcewen@mcewenlaw.com
5850 Blackshire Path
Inver Grove Heights, Minnesota 55076
Telephone: (651) 224-3833

BARON & BUDD, P.C.
Roland Tellis (to be admitted *pro hac vice*)
rtellis@baronbudd.com
Mark Pifko (to be admitted *pro hac vice*)
mpifko@baronbudd.com
David Fernandes (to be admitted *pro hac vice*)
dfernandes@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:     (818) 839-2333

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (to be admitted *pro hac vice*)
Email: kirk@cwclawfirm.com
Clifford L. Carter (to be admitted *pro hac vice*)
Email: cliff@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone: (916) 567-1111

DREYER BABICH BUCCOLA, et al.
Roger A. Dreyer (to be admitted *pro hac vice*)
Email: rdreyer@dbbwclaw.com
Christopher W. Wood (to be admitted *pro hac vice*)
Email: cwood@dbbwclaw.com;
20 Bicentennial Circle
Sacramento, California 95826
Telephone: 916-379-3500

*Attorneys for Plaintiff*